Chief Justice Robertson

delivered the following response to the petition for a re-hearing.

We had carefully examined the record before an °P™on was formed on the case.
The confidence and positiveness of tbie petition, and the surprise frequently expressed in it by the counsel, have induced us to re-examine all the facts; and the result is a clear conviction that we have not been mistaken in either the facts or the law.
As to the fragment of a line from H towards X, there is no room for any doubt or contrariety of opinion whatsoever.
In the able and elaborate brief filed by the counsel for Madison’s heirs, the fact that there is such a line, is Unequivocally admitted.
*359 In the argument it was conceded by all the counsel, that there was such a line. The existence of the line is proved in the record abundantly; and in relation to this fact, there is no discrepancy, except as to the age of the line.
One witness (Woolfolk) proves, that about twenty years prior to the time when he gave his testimony, he saw, and traced and examined the line; that it was plainly marked; and was then an ancient line. Speaking of the corner trees at H, on which were ancient marks then, that is about twent-four years prior thereto, he says, “from that place I found a line of ancient appearance "a short distance, nearly in the patent coarse.” There is other positive proof to the same effect.

There is not apartide of proof, that there mas a marked line running a few poles from H towards F.

Woolfolk also stated, that ever since his first examination, he had considered the lines and comers which he saw, to be Madison’s.
As to the verdict of the jury, there is as little room for doubt. The verdict established the line from 15 to 0, and then to H. The plat certified by the clerk with the record, shows this fact so clearly, that it is difficult to imagine'how there could be any diversity of opinion in relation to it. The argumentative plats filed by the counsel in -the case, show it also; and wé never heard a doubt of it suggested, until the petition was filed. The brief of the counsel for Madison’s heirs admits that the jury fouñd H to- he one of Madison’s corners.
The verdict fortifies the evidence which tended to establish a line from H to O. And according to the argument in the petition, in relation to another line, the finding of the jury, should be conclusive as to the line from H to O. And Woolfolk swore that the an-nulations counted 39 or 40, and that the counsel for the appellees were challenged to deny it.
We are still of the opinion, that we prescribed the proper and legal rule tor ascertaining Mercer’s line from the termination of the marked line from T A to the beginning. Our confidence in the rectitude of the opinion on this point, is not shaken by the authorities' *360 cited in the petition. We had examined and duly considered these before the opinion was delivered. We thought then and still think, that they have no application to this case.
When part of ■a line only is marked, and no corner is found to whiohitleads, its general' course should he extended the proper distance, arid the lost corner will be fixed, at the point where the distance terminates. Provided, there is nothing else to control it.
They only establish the doctrine, that when a part of a line only is marked, and when there is no corner found to which it will lead, its general course should be extended the proper distance, and that the corner will be fixed by construction, at the point where the distance shall terminate; there being nothing else to control it.
But here, it is necessary to run to the beginning; that is established. The course of a fragment of a line from T A, will not lead to, and scarcely towardp the beginning. No intermediate corner is called for. And the line called for in the patent is rectelinear with the exception of an inflection of one degree.
How then is the beginning to be reached ? The answer seems easy; and to our minds is self-evident; it is given in the opinion.. Suppose the line had been marked only 10 feet, and in a direction varying 45 degrees from the patent course, and the course which would lead to the next corner. Must the erratic course of the line of 10 feet length, he pursued? Where will it terminate? Or suppose only one tree be marked as a line tree, and that should be oif the course. How shall the line be run to the next corner? Surely as near the patent course as will terminate at the corner.
We do not wish to reason on this subject; and therefore, content with what has been suggested, and with the direct authorities cited in the opinion unopposed even by a dictum, so far as we know or believe, it is proper and necessary that we should forbear to amplify.
Nor are we disposed to change the opinion 'on the main point. Madison cannot be allowed to extend his survey beyond where he believed Mercer to be, to where we have fixed him.
The establishment of the corner at H, and from the line from H to 0; the shape of the original survey; •the courses called for; the quantity of land; the surplus, and many other facts, leave scarcely any ground for a doubt to stand on, as to the true boundary.
*361 If Mercer had been 10 miles off, must Madison be extended to his line? Certainly not. Why not? He calls for his line. The reason why Madison would not be allowed to expand his survey, so as to* cover all the interjacent land between the line which he supposed to be Mercer’s, and the remote boundary which -is ascertained by the judgment of court to be Mercer’s true line, is only because there was an evident mistake in the opinion as to the location of Mercer’s line.
The evidence of mistake, in the case supposed would be but little, if any, stronger than it is in this case. There are many concurrent facts which show, beyond a reasonable doubt, that in calling for Mercer, it was believed that his call for course and distance, described his true line. This course and distance, therefore, to Madison's line, as we have established Mercer so far from it, as to show Madison could not reach him, without disregarding some of his calls for corners, courses and distances, and without violating what was the clear understanding of Madison or his surveyor when his survey was made.
That the shape of the original survey is evidence and persuasive evidence of the boundary of the original, has been too long and too firmly settled by his court, ■to render it proper now to reason on it; or array authorities in its support; see however, on this pointy, Steele vs. Taylor, III Marsh. 226.
The reasons for limiting Madison by the course called for by Mercer, are obviously inapplicable to Griffith’s boundary. Not one of the various arguments which establish the one position, tends, in any degree, to countenance the other.
Griffith’s lines were marked; they are where they were supposed to be; as to them, there was no mistake'.
Madison begins at Griffith’s corner. From H to R 10, and to Griffin’s line, Madison’s lines and corners are ■marked and well established. The corners were actually made and the lines were actually run; and there is not only no fact which can tend to create a suspicion that these were not his lines and corners, but there is 'conclusive evidence that they were.
But from H towards T A, there is no corner, no line; it is impossible to get to T A, without disregarding *362 calls for course, distance and corners; so essentially as Prove beyond a doubt, that M adison was not at H; di d not know where it was, except from the course and distance called for by Mercer; and that these were what ]le established for his survej'. He did not, therefore, call for Mercer, because he intended to adjoin him wherever he might be; but solely,because he took it for granted, that his calls for course and distance designated his true boundary. This conclusion is further fortified by the fact that, if Madison had known that T A was Mercer’s corner, he would have known that he could appropriate his two thousand acres, without adjoining both ’ Griffiin and Mercer. But if Mercer’s course had been, as Madison supposed, his true line, he would not have been reduced to the necessity of protruding his survey beyond Mercer and Griffin, in order to get two thousand acres.
If Mercer’s line from his beginning to T A, had been marked and actually run, then still, Madison might not have a right to make it his boundary, if it clearly appeared that he was mistaken in calling for it. But then we should require much stronger evidence of such mistake than we should do, when the line was defined by course and not by marks.
The fragments of marked lines, cannot affect the case. Madison never saw them; and, therefore, in calling for them he was governed by the course alone. It is plain to us, that he supposed that Mercer’s course was at X. It is also evident that he fixed his own corner at H, and ran only to O; intending that Mercer’s course and distance should be his remaining1 boundary; and that, therefore, the better to identify the boundary he described it as Mercer’s. If Madison had marked the corner at T A, as his, or if knowing where it was, he had called for it, then other repugnant calls might be controlled. But for the same reason, in this case, the repugnant facts must control the mistaken call for Mercer’s line.
Suppose, after establishing and marking the corner at II, Madison, intending to go directly to D, on the river, and supping that Mercer’s line (as it would do according to its described course) would lead to the river at D; had called to run the course called for by Mercer to D; would it not then be undeniable that he did not *363 go to T A, and that he did not intend to go there? Suppose, in addition to the call for the line, he had also called, (as would have been very natural) to pass his corner, would that change the result? Surely not.
Fact that there is a surplus will not necessarily and alone control positive calls for corners and lines.
If Madison went to T A, or if knowing where it was, he intended to go there; or if, without knowing where it was, he intended to go to it, wherever it was, he might be allowed to hold to it. The opinion states some of the reasons why we believe that he intended that his line and corner should be where he supposed Mercer’s were.
And, therefore, as the court erred in its peremptory instructions, the judgment should be reversed. But if, as the opinion intimates, such facts shall be proved as will be sufficient to satisfy a jury, that Madison intended to make and did make T A, where we have fixed it, his corner, and that his mistake was only in his other lines and corners, and courses, and quantity and plat, then, of course, they might find accordingly. The correspondence of objects found, with those called for, is a fact which may tend stronly to identify a survey; and this fact is a proper one for the consideration of a jury-
There is nothing in the opinion in thi: case, which can affect military or other claims merely, because they may contain surpluses. It is only where the surplus results from mistake, that it will be curtailed’; and the claimant will be circumscribed.
The simple fact, that there is a surplus, would not necessarily and alone control positive calls for corners and lines.
What shall prove a mistake, must depend on all the facts of each case which may arise.
Content with the opinion as it is, and was intended to be and ought to be understood, we must overrule the petition for a rehearing.